STATE, RESPONDENT, *v.* STORY, APPELLANT.

(No. 3,969.)

(Submitted April 23, 1917. Decided May 28, 1917.)

[165 Pac. 748.]ᵢ

*County Commissioners—Removal—Collection of "Illegal Fees"*
*—Compensation—Statutes.*

Removal of Officers—"Illegal Fees"—Definition.
  1. *Held,* that "illegal fees," for the collection of which a public
  officer may be removed under section 9006, Revised Codes, are any
  moneys collected or attempted to be collected by a public officer
  from any source whatever, whether as mileage, *per diem,* or specific
  charge for service rendered in his office, without authority of law for
  such collection, though done in good faith and for efficient service
  performed for the public.
    [As to public officer "knowingly" taking illegal fees, see note in
  Ann. Cas. 1912A, 433.]

Same—County Commissioners—Compensation—Statutes.
  2. *Held,* further, that the effect of sections 3194 and 2952, Revised
  Codes, is not to authorize compensation to county commissioners, for
  attending to business of the county other than meetings of the board,
  and inspecting and overseeing roadwork, without a previous order
  of the board, charges for which services are otherwise illegal.

*Appeal from District Court, Gallatin County, in the Ninth*
*Judicial District; R. Lee Word, a Judge of the First District*
*presiding.*

PROCEEDINGS by the State, on the accusation of M. Langohr
and others, against Nelson Story, Jr. From an adverse judg-
ment, defendant appeals. Affirmed.

*Mr. W. S. Hartman* and *Mr. Justin M. Smith,* for Appellant,
submitted a brief; *Mr. Hartman* argued the cause orally.

*Mr. S. C. Ford,* Attorney General, and *Mr. Frank Woody,*
Assistant Attorney General, for the State, submitted a brief;
*Mr. Woody* argued the cause orally.

MR. JUSTICE SANNER delivered the opinion of the court.

In a proceeding had under the provisions of section 9006,
Revised Codes, the appellant, Nelson Story, Jr., was found by

the district court of Gallatin county to have charged and collected illegal fees for services rendered in his office as county commissioner of said county, and was adjudged to be deprived of and ousted from such office. The basis for the finding and adjudication is an agreed statement of facts from which it is made to appear, among other things: That the appellant charged and collected from the county certain bills for services as county commissioner, which bills included items of charge at the rate of $8 per day for "attending to business of the county" other than meetings of the board, and items of charge at the rate of $8 per day for "inspecting and overseeing roadwork"; that the service for which such charges were made was actually rendered and believed to be for the best interests of the county in connection with roadwork under the immediate supervision of the board, but was not rendered pursuant to any previous order of the board directing the appellant to inspect the condition of any contract construction work on any highway or bridge in the county, or in connection with any such inspection.

I. The main contention of appellant is stated in the language of his counsel as follows: "We contend that the word 'fees,' as used in the section under consideration, refers only to the statutory charges for official services rendered by an official to the different members of the general public, and does not in any way include, refer to, or contemplate the compensation, whether by way of salary or *per diem,* paid by the state or the county direct to its officials for services rendered; that the statute was intended for the protection of the individual members of the general public who, dealing with the officer, as such, may have been compelled to pay an illegal fee for the services rendered; that it was never intended to protect the county, the state, or the municipality from charges by the officer against it for services rendered by the official which were either illegal or wrongful or which were covered by his compensation or salary fixed by the statute regulating the compensation which he should receive for his services; that the statute is both penal and criminal, and that it cannot be extended to charges made by officials (however

irregular, wrongful or illegal) for services performed or alleged to have been performed which were not within the purview of the statute when enacted; that in this state county commissioners do not, and never have, charged, collected or received 'fees' within the meaning of the statute; that they could not do so from the nature of the services required of them by the statute, and rendered by them in practice; that, conceding that appellants charged and collected *per diem* for services which they had rendered to the county, which charges and collections were without authority of law, they did not thereby become guilty of charging and collecting illegal fees within the purview of the statute in question; and that therefore the judgment of ouster rendered against them in their respective cases by the trial court should be reversed.''

This entire contention is in reality foreclosed by the decision of this court in *State ex rel. Payne* v. *District Court, ante,* p. 350, 165 Pac. 294, wherein we said: ''The term 'fees,' used in the Codes, is somewhat elastic. Section 3172, Revised Codes, provides that 'the county surveyor is entitled to receive and collect for his own use the following fees: * * * Expense of chainman and markers,' *etc.* Section 3173: 'The coroner is entitled to receive and collect for his own use the following fees: * * * For each mile actually traveled in the performance of any duty, ten cents.' We think the term 'fees,' used in section 9006, is sufficiently broad to comprehend both *per diem* and expenses. * * * If the items for which the accused charged these fees show on the face of them that they are not authorized by law, there is no necessity to characterize them or to attempt to show wherein they are illegal. They show for themselves. We think the accusation, in the first count, is sufficient to charge the collection of illegal fees. In effect, it alleges that the accused, acting in his official capacity as county commissioner of Madison county, spent one day seeing about a right of way for which he charged and collected from the county $8, and $5 additional for expenses, *etc.* This item particularly is not comprehended within any provisions of law authorizing fees or other compensation to a member

of the board of county commissioners for services rendered in his office, and is therefore *prima facie* illegal.'' Because, however, the conclusion thus announced has been challenged by a motion for rehearing, and because the appellant here invokes historical data to support his view, we determined to re-examine the subject. The result has been to confirm our view that the term **[1]** ''illegal fees'' is used in section 9006 in its broadest sense, as meaning any moneys collected or attempted to be collected, by a public officer from any source whatever, whether in the guise of mileage, *per diem* or specific charge for service rendered, or to be rendered, in his office without authority of law for such collection. We are impelled to this result by these considerations:

1. Neither in common parlance nor in legal usage has the word ''fees'' any such narrow limit as that assigned to it by appellant's counsel. It has many meanings, general and particular. Generally it signifies a reward or payment of money (Trench's Select Glossary) ; money paid or bestowed; emolument (Century Dictionary) ; reward or compensation for services rendered or to be rendered (Webster's International Dictionary). In its particular sense it imports a recompense or reward fixed by law for the services of a public officer. (Century Dictionary.) Legally, it means a reward or wages given to one for the execution of his office, differing from costs in that fees are a recompense to the officer for his services. (Bouvier's Law Dictionary.) Nowhere is it said to connote a particular source, as from individuals, and not from nation, state or county. So that, considered in its ordinary significance, the term ''fees,'' as used in section 9006, would cover the appellant's charges made upon and paid by the county, and the phrase ''collecting illegal fees for service rendered'' accurately describes his receipt of the money if there was no legal warrant for its payment.

2. Confining ourselves to the historical data submitted, we might possibly conclude that prior to 1895 the word ''fees'' was understood as counsel now defines it, but a wider survey convinces us that this would not be correct. In the Bannack Stat-

utes (page 470 *et seq.*) it is specifically applied to the sheriff's *per diem* for attending court, payable by the county, to his compensation for dieting prisoners, to his mileage for serving papers and for transporting prisoners; also to the compensation of $10 for each inquest and to the mileage allowed coroners, payable by the county; also to the *per diem* of judges and clerks of election, payable by the county; also to the compensation, percentages, and mileage allowed the county treasurer, payable by the county; also to the *per diem* and mileage of election couriers, the *per diem* and mileage of witnesses, the *per diem* and mileage of jurors, and the *per diem* of prosecuting attorneys attending causes on change of venue. Substantially the same use of the word appears in the Codified Statutes of 1871–72 (page 420 *et seq.*), in the Revised Statutes of 1879 (5th Div., secs. 585, 586, 587, 590, 593, 594, 596), and in the Compiled Statutes of 1887 (5th Div., secs. 956, 1074, 1075, 1089, 1090, 1095). It is further interesting to note that in the "Act concerning compensation of county, district, and township officers," approved March 6, 1891 (Sess. Laws 1891, p. 235 *et seq.*), the word "fees" is used to describe charges paid by the county as well as by individuals, and charges for *per diem* and mileage as well as those for specific service; moreover, section 9 of the Act contains a provision that "any such officer who shall receive any fee or reward or salary not specifically provided by law shall be liable to the county, state, or persons paying the same," *etc.* While none of these references apply specifically to county commissioners, they establish, we think, that prior to 1895 the word "fees" meant more than specific charges to individuals for particular services, and that illegal fees could be collected from the county and could consist of unauthorized claims for *per diem* and mileage.

But, whatever may be the correct, or even just, inference from previous legislation, there cannot be the slightest doubt that, when the Codes of 1895 were enacted, including as section 1545 of the Penal Code the present section 9006 of the Revised Codes, the term "fees" was not confined in its significance to specific charges for particular services rendered to individuals,

nor did it always exclude moneys had from the county or state, whether as compensation, *per diem,* or mileage. On the contrary, we find in the Chapter on "Salaries and Fees of Officers" (Chap. IV, Pt. IV, Tit. II, Pol. Code), which with few changes reappears in the Revised Codes of 1907 as sections 3111–3197, that it is used in almost every possible sense. For example: In section 4592 (Rev. Codes, sec. 3113) it means a mode of compensation different from salary; in section 4604 (Rev. Codes, sec. 3137) it connotes mileage payable to the sheriff by the county in certain cases; in section 4605 (Rev. Codes, sec. 3138) it designates the recompense payable by the county to the sheriff for boarding prisoners; in sections 4606, 4607, 4611, 4612, 4614, 4615, 4616 (Rev. Codes, secs. 3139, 3140, 3144, 3145, 3147, 3148, 3149), and others it imports specific charges to be collected from private individuals for particular services; in section 4618 (Rev. Codes, sec. 3151) it refers to costs of publications; in section 4634 (Rev. Codes, sec. 3167) to the sheriff's mileage as well as his other charges; in section 4639 (Rev. Codes, sec. 3172) to the *per diem* of the county surveyor, to his charges for copies, *etc.,* and to his expenses for chainmen and markers, whether chargeable to the county or to private individuals; in section 4640 (Rev. Codes, sec. 3173) to the *per diem* and other charges of the coroner which are payable by the county; in section 4642 (Rev. Codes, sec. 3176) to the charges of the justice of the peace, whether collectible from the county in criminal cases, or from individuals in other matters; in section 4643 (Rev. Codes, sec. 3177) to the charges of the constable, whether collectible from the county in criminal cases or from individuals in civil actions; in section 4643 (Rev. Codes, sec. 3177) to mileage as among the fees of the constable; in sections 4648 and 4650 (Rev. Codes, secs. 3182, 3184) to the *per diem* and mileage of witnesses. In no way can it be ascertained whether an officer has collected illegal fees within the meaning of section 9006 without a reference to the Chapter on fees from which the above references are taken; with such references, it would be a perversion to say that such collection

occurred if the authorized moneys came from individuals, but not if they came from the county, or if they consisted of *per diem* or mileage instead of specific charges or particular services.

3. Besides the *Payne Case, supra,* this court had occasion in *State ex rel. Rowe* v. *District Court,* 44 Mont. 318, Ann. Cas. 1913B, 396, 119 Pac. 1103, to consider some of the aspects of appellant's present contention. There one Booher was sought to be removed from office under section 9006 for collecting illegal fees. The collection was from the county in good faith for services rendered, but it was held nevertheless that, since there was no legal warrant for it, the transaction constituted a collection of illegal fees for which removal, under section 9006, was possible. Elsewhere, too, the same result has been reached. Under the statute in North Dakota, Idaho and Utah, as here, county commissioners received *per diem* and mileage payable by the county; and in *State* v. *Richardson,* 16 N. D. 1, 109 N. W. 1026, *State* v. *Borstad,* 27 N. D. 533, Ann. Cas. 1916B, 1014, 147 N. W. 380, *Rankin* v. *Jauman,* 4 Idaho, 53, 36 Pac. 502, *Rankin* v. *Jauman,* 4 Idaho, 394, 39 Pac. 1111, *Ponting* v. *Isaman,* 7 Idaho, 283, 62 Pac. 680, and *Robinson* v. *Huffaker,* 23 Idaho, 173, 129 Pac. 334, it was expressly determined that a county commissioner who receives from his county *per diem* and mileage to which he is not entitled, either because not earned or not authorized by law, is guilty of collecting illegal fees for services rendered in his office, and subject to removal under provisions similar to section 9006 of our Code. And the same conclusion was reached in *Skeen* v. *Craig,* 31 Utah, 20, 86 Pac. 487, respecting a city councilman. In this case the court, upon the first appeal reversing a judgment below for the defendant, said: ''Counsel for defendant insist that the facts as disclosed by the record do not bring the case within the provisions of section 4580; their contention being that this section refers to officers only who are paid by fees for specific services, or, being salaried officers, are yet required to charge and collect fees for specific services, and that, as a city

councilman is paid a stipulated and fixed salary, and in no way charged with the collection of fees of any kind whatsoever, he cannot be proceeded against under said section. It is conceded that the construction of the section of the statute under which this action is brought depends more upon the sense in which the term 'fees' is therein used than upon the technical definition of the word as contradistinguished from other terms denoting the compensation of public officers. The terms of this section of the statute wherein it refers to public officers and the 'charging and collecting illegal fees' are general, and are not confined to the fees charged and collected by any one class of public officers not liable to impeachment. Now, it is a well-recognized rule of statutory construction that general terms and expressions of a statute are to be given a general construction unless some other provision of the statute or the context itself shows that the legislature intended them to be used and applied in a limited or restricted sense. (Sutherland, Stat. Const., 2d ed., 392; Black on Interp. Laws, 136.) We fail to find anything in the phraseology of the section itself, or when it is read and considered in connection with other provisions of the statute relating to the general subject matter of the action, which restricts or limits the scope or operation thereof to only one class of officers. By its very terms the statute includes any officer (not liable to impeachment) who has been guilty of charging and collecting illegal fees. And its provisions are equally broad respecting 'illegal fees.' To bring the charging and collecting of illegal fees within the statute, it is not necessary that such fees be obtained from any specific source or sources, nor that they be charged or collected by an officer who is authorized by law to collect fees for specific services. The charging and collecting of illegal fees from the state, county, or municipality by a public officer for private gain, is as clearly within the statute as the charging and collecting of illegal fees from a private individual. It would seem that, if it were intended to limit proceedings of this kind to include only a certain or specified class of public officers who might become de-

linquent, the legislature would have said so. The legislature has not only failed to so state in so many words, but, as we have observed, there is nothing in any of the statutory provisions which relate to or have any bearing upon the subject matter of this class of actions from which such an intent can be inferred.'' We think that these authorities effectually dispose of appellant's contention.

It has been suggested—though it is not exploited in appellant's brief—that the only illegal fees for collecting which an officer can be removed under section 9006 are those received for services rendered in his office, and if the service for which collection be made is not required of the officer or authorized by law to be performed by him as such, it is not service rendered in his office; so that, whatever legal animadversion he may be subjected to for the collection, assuming the charge to be without legal warrant, there can be no removal under section 9006. In a certain sense this is obvious; but it is not illuminating. At the time involved here county commissioners had general supervision over highways (Laws 1915, Chap. 141, sec. 2), were charged with the establishment, maintenance and control of the same (Laws 1915, Chap. 141, sec. 2; Rev. Codes, sec. 2894, subd. 4); it was their function to manage and care for highways as other interests committed to their charge (Rev. Codes, sec. 2894, subd. 22), and in that behalf they could do or cause to be done whatever might be necessary (Rev. Codes, sec. 2894, subd. 25; Laws 1915, Chap. 141, sec. 2). If these provisions mean anything at all, it is that county commissioners could in virtue of their office personally superintend and effectively direct the work of construction and repair upon highways and could depute one of their number to see and speak for them respecting the same; but, unless payment is authorized for such service none can be lawfully made, and to charge and collect for it is to charge and collect illegal fees for service ''rendered in his office.''

II. In oral argument it was insisted that there are two [2] statutory provisions, *viz.*, sections 3194 and 2952, Revised

Codes, under which it is permissible for commissioners to receive compensation for such service as was rendered in the present instance, and that therefore no illegal fees were collected. We cannot reconcile this with the theory of the briefs, nor does it at all conform to the postulates of the *Payne Case* referred to above. We consider it, however, in order that the matter may be set at rest. The sections referred to are as follows:

"3194. Members of the board of county commissioners each receive eight dollars per day and fifteen cents per mile for the distance necessarily traveled in going to and returning from the county seat and his place of residence."

"2952. All claims against the county presented by members of the board for per diem and mileage, or other service rendered by them, must be verified as other claims, and must state that the service has been actually rendered."

If these two sections were the only provisions reflecting on the subject, it might be possible to imply from the phrase "or other service rendered," in section 2952, and from the absence of any express restriction in section 3194, that the commissioners should have compensation for any service whatever rendered to the county—for those to which *per diem* properly applies at the rate of $8 per day, together with mileage, and for other services on some basis not stated, perhaps the reasonable value of the service. Section 2952, however, is in itself no authorization to take money from the public treasury for any purpose, and cannot be employed to bolster up a claim for which independent authority does not exist (*Irwin* v. *County of Yuba*, 119 Cal. 686, 52 Pac. 35) ; it is a mere prescription, touching the manner in which commissioners' claims for compensation, elsewhere authorized, shall be formulated and is designed in connection with section 2945 to enable the board to determine in the first instance whether it will even consider the claim (*Christie* v. *Board of Supervisors*, 60 Cal. 164). Moreover, these sections are not the only ones upon the subject. Section 2893 provides: "Each member of the board of county commissioners is entitled to eight dollars per day for each day's attendance on the

sessions of the board, and ten cents per mile for the distance necessarily traveled in going to and returning from the county seat and his place of residence, and no other compensation must be allowed''; and sections 12 and 13 of Article III in Chapter 141, Laws of 1915, authorize commissioners especially ordered by the board to inspect the condition of contract construction work on highways and bridges to receive $8 per day and actual traveling expenses. It is not impossible to harmonize these provisions; construing them together, it may be said that, as respects *per diem,* a commissioner may receive $8 per day for each day's attendance upon sessions of the board and for each day given to inspection of contract roadwork under order of the board, but shall receive no other compensation. In every instance his claim must be verified as other claims. Conceding, however, that as to sections 2893, 2952 and 3194, there is such a difference in implication as to present an essential conflict, then, for reasons prescribed in the Code itself, section 2893 must prevail. All are original sections in the Code of 1895 (Pol. Code, secs. 4222, 4293, 4660), but section 2893 is an obvious carrying forward of a pre-existing provision (sec. 347, 5th Div., Rev. Stats. 1879; sec. 755, 5th Div., Comp. Stats. 1887), with changes as to mileage and the fund from which payment shall be made. Section 2893 is part of the Article and Chapter (Art. I, Chap. II, Tit. II) which defines the organization, term and compensation of county commissioners, and is particularly germane to that subject. Section 2952 is part of the Article and Chapter (Art. VI, Chap. II, Tit. II) which relates to ''Other Powers and Restrictions'' in county government; and section 3194 is found in the general Chapter (Chap. IV, Tit. II) on salaries and fees of public officers. The rule established by the Code is that, if the provisions of any Article conflict with or contravene the provisions of another Article in the same Chapter, the provisions of each Article must prevail as to all matters and questions arising out of the subject matter of such Article (Rev. Codes, sec. 3557), and if the provisions of any Chapter conflict with or contravene the provisions of

another Chapter of the same Title, the provisions of each Chapter must prevail as to all matters and questions arising out of the subject matter of such Chapter (Rev. Codes, sec. 3556).

It is doubtless true that, in the case of a commissioner acting honestly and with a view to the efficient discharge of the duties of his office, the conclusion is a harsh one which results not only in the restoration of moneys actually earned, though illegally claimed, but also in his removal from office. This, however, cannot be helped. Section 9006 is general, makes no distinctions, leaves no room for judicial discretion. It was designed to serve a far-seeing public purpose, and to deny its application to this case, upon the grounds urged here, would be to destroy its value in other cases where its effect may be more certainly needed.

The judgment appealed from was commanded by the facts stated, and is therefore affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.